## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

BARBARA BOYD BEATTY, et al.,          )
                                      )
            Plaintiffs,               )
                                      )
v.                                    )          Case No. CIV-12-1021-M
                                      )
JRMB II, INC., et al.,                )
                                      )
            Defendants.               )

## ORDER

Before the Court is defendants' Motion to Dismiss, filed October 19, 2012.  On November 27, 2012, plaintiffs filed their response, and on December 11, 2012, defendants filed their reply. Based upon the parties' submissions, the Court makes its determination.

I.      Introduction

Plaintiffs are three former minority shareholders in J.R. Montgomery Bancorporation ("JRMB"), FSNB, and CNB (collectively, "the Companies").  Plaintiffs allege that, on December 28, 2010, they were cashed out of their ownership by certain transactions of defendants Zelda M. Davis, John R. Davis, Roma Lee Porter, George L. Porter, and Tresea M. Moses (collectively, "the Individuals") during a merger and reorganization.  The Office of Comptroller of the Currency ("OCC") approved defendants' merger and reorganization.[1]

---

[1] The *Comptroller's Licensing Manual: Business Combinations, December 2006* notes that "approval": (1) "[r]eflects only its view that the transaction does not contravene applicable competitive standards imposed by law and is consistent with regulatory policies relating to safety and soundness"; (2) "[i]s not an OCC opinion that the proposed combination is financially favorable to the stockholders or that the OCC has considered the adequacy of the terms of the transaction"; and (3) "[i]s not an endorsement of, or recommendation for the combination." The *Comptroller's Licensing Manual: Business Combinations, December 2006*, attached as Exhibit 1 to Plaintiff's Response and Objections to Defendants' Motion to Dismiss.

The Individuals collectively controlled the Companies, comprising a majority ownership and a majority of the directors and executive officers.  According to plaintiffs, each of the Individuals have a familial relationship to the others.  Plaintiffs allege that they conspired and orchestrated a scheme to squeeze out minority shareholders of the Companies for the purpose of consolidating familial ownership and control of the Companies.  Plaintiffs further allege that the Individuals, acting without any Board of Director approval and without observing corporate formalities, selected the shareholders who would be allowed to continue and the shareholders who would be eliminated.

According to plaintiffs, defendants mailed three information statements to minority shareholders, with each statement containing misleading statements and omissions of material facts.  Plaintiffs allege that if the material facts were properly disclosed, plaintiffs would have exercised their appraisal rights and had their stock valued in an appraisal proceeding.

On September 13, 2012, plaintiffs filed their Complaint, alleging, *inter alia*, violations of Section 10(b) of the Exchange Act and Rule 10b-5.  Defendants move to dismiss this matter on the following grounds: (1) preemption; (2) plaintiffs have failed to state a claim under Section 10(b) or Rule 10b-5; and (3) plaintiffs have failed to state their allegations with the requisite particularity.

II.     Standard

        A.      Federal Rule of Civil Procedure 12(b)(6)

Regarding the standard for determining whether to dismiss a claim pursuant to Rule 12(b)(6), the United States Supreme Court has held:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The

2

> plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotations and citations omitted). Further, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." *Id.* (internal quotations and citations omitted). Additionally, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id*. at 1949 (internal quotations and citations omitted).

B.    Fraud

Federal Rule of Civil Procedure 9(b) provides, in pertinent part: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud . . . and must set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726-27 (10th Cir. 2006) (internal quotations and citations omitted).

Additionally, in the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(b), Congress has set forth further pleading requirements for private securities fraud actions. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). Specifically, "[t]he PSLRA requires plaintiffs to state with particularity both the facts constituting the alleged violation,

and the facts evidencing scienter, i.e., the defendant's intention 'to deceive, manipulate, or defraud.'"

*Id.* (citing 15 U.S.C. § 78u-4(b)(1), (2); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194, and n. 12).

"As set out in § 21D(b)(2) of the PSLRA, plaintiffs must 'state with particularity facts giving rise

to a strong inference that the defendant acted with the required state of mind.'" *Id.* at 314 (quoting

15 U.S.C. § 78u-4(b)(2)).

> [T]o determine whether a complaint's scienter allegations can survive threshold inspection for sufficiency, a court governed by § 21D(b)(2) must engage in a comparative evaluation; it must consider, not only inferences urged by the plaintiff . . . , but also competing inferences rationally drawn from the facts alleged. An inference of fraudulent intent may be plausible, yet less cogent than other, nonculpable explanations for the defendant's conduct. To qualify as "strong" within the intendment of § 21D(b)(2), we hold, an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent.

*Id.*

III.    Discussion

    A.    Preemption

When addressing questions of preemption, a court must begin its analysis "with the

assumption that the historic police powers of the States [are] not to be superseded by the Federal Act

unless that was the clear and manifest purpose of Congress." *Altria Grp., Inc. v. Good*, 555 U.S. 70,

77 (2008) (internal quotation and citation omitted). In determining whether a federal statute

preempts state law, the United States Supreme Court has opined that a court must answer a question

of congressional intent. *Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25, 30 (1996)

(citations omitted). Specifically, "[d]id Congress, in enacting the Federal Statute, intend to exercise

its constitutionally delegated authority to set aside the laws of a State? If so, the Supremacy Clause

requires courts to follow federal, not state, law." *Id.* The Supreme Court further opined that:

> Sometimes courts, when facing the pre-emption question, find language in the federal statute that reveals an explicit congressional intent to pre-empt state law. More often, explicit pre-emption language does not appear, or does not directly answer the question. In that event, courts must consider whether the federal statute's "structure and purpose," or nonspecific statutory language, nonetheless reveal a clear, but implicit, pre-emptive intent. A federal statute, for example, may create a scheme of federal regulation "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." Alternatively, federal law may be in "irreconcilable conflict" with state law. Compliance with both statutes, for example, may be a "physical impossibility," or, the state law may "stan[d] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

*Id.* at 31 (internal citations omitted).

The National Bank Act, 12 U.S.C. § 215a, provides, in pertinent part: "One or more national banking associations or one or more State banks, with the approval of the Comptroller, under an agreement not inconsistent with this subchapter, may merge into a national banking association located within the same State, under the charter of the receiving association." 12 U.S.C. § 215a(a). Thus, the Act "governs the merger of national banks with state or other national banks." *State of Colo. ex rel. Colo. State Banking Bd. v. Resolution Trust Corp.*, 926 F.2d 931, 938 n.14 (10th Cir. 1991).

Congress originally enacted § 215a's sections governing bank mergers and consolidations with the goal of simplifying the merger of national bank associations. *Comty. Bank of Ariz. v. G.V.M. Trust*, 366 F.3d 982, 986 (9th Cir. 2004); *NoDak Bancorporation v. Clarke*, 998 F.2d 1416, 1422 (8th Cir. 1993). "When 12 U.S.C. § 215a(b) was amended in 1952, Congress' motivation was to bring the National Bank Act into parity with state statutes." *NoDak Bancorporation*, 998 F.2d

at 1422.  Congress final procedural amendments to § 215a sought to further simplify and expedite the merger and consolidation process.  *Id.*

Having carefully reviewed the parties' submissions, the Court finds that § 215a does not preempt plaintiffs' Oklahoma tort and securities claims.  Here, the crux of defendants' argument is that "Section 215a's purpose . . . would be defeated if [d]efendants are subjected to a collateral attack arising from a merger procedure and appraisal methods that are governed by federal banking law."  Defendant's Motion to Dismiss [docket 13] at 27.  However, absent further argument as to a specific "irreconcilable conflict" between § 215a and the Oklahoma tort and securities laws at bar, the Court finds that said state laws do not stand as an obstacle to the accomplishment and execution of § 215a's purposes.  Moreover, given that one of § 215a's amendments was enacted to bring § 215a into parity with state statutes, the Court finds that § 215a is not so pervasive as to reasonably infer that Congress left no room for states to supplement it.  Therefore, the Court finds that Congress did not intend to set aside Oklahoma's tort and securities laws when it enacted § 215a.

Accordingly, the Court finds that plaintiffs' Oklahoma tort and securities claims are not preempted by § 215a.

B.    Section 10(b) of the Exchange Act and Rule 10b-5

Section 10(b) of the Exchange Act provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange–
>
> \*                    \*                    \*
>
> To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as

6

necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b).  Rule 10b-5 provides, in pertinent part:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

       *            *            *

To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading . . . .

17 C.F.R. § 240.10b-5(b).  Furthermore, the Tenth Circuit has held that "to state a claim under Section 10(b) of the Act and Rule 10b-5 a plaintiff must allege: '(1) a misleading statement or omissions of a material fact; (2) made in connection with the purchase or sale of securities; (3) with intent to defraud or recklessness; (4) reliance; and (5) damages.'" *City of Phila. v. Fleming Cos., Inc.*, 264 F.3d 1245, 1257-58 (10th Cir. 2001) (citing *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1118 (10th Cir. 1997)).

<u>1.</u>     <u>Misleading Statement or Omission of Material Facts</u>

Defendants assert that plaintiffs have not alleged that defendants made misleading statements or omissions of material facts regarding the merger.  Plaintiffs contend that they have alleged false statements and omissions of material facts against defendants and that they have satisfied the pleading requirements for private securities fraud actions.

A statement or omission is only material "'if a reasonable investor would consider it important in determining whether to buy or sell stock,' and if it would have 'significantly altered the total mix of information available' to current and potential investors." *City of Phila*, 264 F.3d at 1265 (quoting *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1119 (10th Cir. 1997)).

Having carefully reviewed plaintiffs' Complaint, the Court finds that plaintiffs have alleged with sufficient particularity that defendants made misleading statements or omissions of material facts in regards to the merger in this matter. Particularly, plaintiffs alleged, *inter alia*,[2] that the information statements: (1) failed to disclose that the appraisal obtained to evaluate the Companies' shares employed discount rates; (2) omitted the dividend history, the current and historical book value, and current and historical financial data of the Companies; and (3) failed to disclose the factors the Companies used in determining which shareholders would be extended the opportunity to participate in the exchange offers. Based upon plaintiffs' allegations, plaintiffs would have exercised their appraisal rights and had their stock valued in an appraisal proceeding. The Court further finds that a reasonable investor would consider the statements and omissions referenced in plaintiffs' Complaint important in determining whether to sell stock. Finally, the Court finds that the referenced statements or omissions would have significantly altered the total mix of information available to plaintiffs and other investors.

Accordingly, the Court finds that plaintiffs have pled with particularity that defendants provided misleading statements or omissions of material facts made in connection with the purchase or sale of securities.

### 2.   Intent to Defraud or Recklessness

As set forth in Part II.B, "plaintiffs must 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 314 (quoting 15 U.S.C. § 78u-4(b)(2)). "[C]ourts must consider the

---

[2]Plaintiffs have alleged approximately thirteen misleading statements or omissions of material fact related to the information statements. *See* Complaint [docket no. 1] 18-29.

complaint in its entirety . . . . The inquiry is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter." *Id.* at 310 (emphasis in original). "[I]n determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences." *Id.* "A complaint will survive only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any plausible opposing inference one could draw from the facts alleged." *Id.*

Further, to establish scienter in a securities fraud case alleging non-disclosure of potentially material facts, the plaintiff must demonstrate that (1) the defendant knew of the potentially material fact, and (2) the defendant knew that failure to reveal the potentially material fact would likely mislead investors. *See id.* at 1261. In pleading scienter, "the important issue [ ] is not whether Defendants knew the underlying facts, but whether Defendants knew that not disclosing the [underlying facts] posed substantial likelihood of misleading a reasonable investor." *Id.* at 1264. "The requirement of knowledge in this context may be satisfied under a recklessness standard by the defendant's knowledge of a fact that was so obviously material that the defendant must have been aware both of its materiality and that its non-disclosure would likely mislead investors." *Id.* at 1261.

Here, viewing the Complaint in its entirety, and taking all facts collectively, the Court finds that plaintiffs have sufficiently alleged scienter. Plaintiffs specifically allege that the Individuals shared a familial relationship and collectively devised a scheme to eliminate non-familial minority shareholders from ownership. The Court finds that, based upon the alleged familial relationship shared by the Individuals, coupled with misleading statements and omissions set forth in Part III.B.1, a reasonable person would deem the inference of scienter cogent and at least as compelling as any plausible opposing inference one could draw from the facts alleged.

9

Accordingly, the Court finds that plaintiffs have sufficiently pled that the Individuals had the requisite intent to defraud or recklessness.

> 3.    Reliance
>
>> In order to state a claim under section 10(b), a plaintiff must establish that, "in connection with the purchase or sale of a security, 'the defendant, with scienter, made a false representation of a material fact upon which the plaintiff justifiably relied to his or her detriment.'" Reliance is an element of the section 10(b) cause of action because it "provides the requisite causal connection between a defendant's misrepresentation and a plaintiff's injury."

*Joseph v. Wiles*, 223 F.3d 1155, 1161 (10th Cir. 2000) (internal citations omitted).

Further, the United States Supreme Court has "generally rejected theories of causation presented by shareholders whose participation was not needed for corporate action, and held that in most instances where the votes of majority shareholders were sufficient to effect a merger without minority approval, a minority shareholder could not prove causation under § 14(a), despite the receipt of a misleading proxy statement." *Boone v. Carlsbad Bancorporation, Inc.*, 972 F.2d 1545, 1557 (10th Cir. 1992) (citing *Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991) (internal citations omitted)). The Tenth Circuit has noted that said reasoning also applies to § 10(b) claims. *See id.* To that end,

> in the context of short-form or "squeeze out" mergers, it has been held that in order to state a claim under section 10b or Rule 10b-5, "forced sellers," . . . must allege that they had a means to prevent the forced sale which they could and would have pursued had they known of the omissions and misrepresentations, to establish materiality and/or reliance.

*Eastwood v. Nat'l Bank of Commerce, Atlus, Okla.*, 673 F. Supp. 1068, 1072 (W.D. Okla. 1987) (citations omitted).

In the case at bar, the Court finds that plaintiffs have sufficiently satisfied the reliance element. Specifically, accepting plaintiff's allegations as true,[3] plaintiffs would have exercised their appraisal rights and "would have taken additional steps . . . [,] such as instituting an action for injunctive relief." Complaint [docket no. 1] at ¶ 66. Although plaintiffs' participation, as minority shareholders, may not have been needed for the alleged squeeze-out sale, the Court finds that plaintiffs' lost state remedy of injunctive relief satisfies the reliance requirement.[4]

Accordingly, the Court finds that plaintiffs have sufficiently pled the reliance element.[5]

C.     Fiduciary Duty and State Security Claims

Defendants move to dismiss plaintiffs' claims for breach of fiduciary duty and violation of Oklahoma Uniform Securities Act of 2004 because (1) the Court does not have supplemental jurisdiction if it dismisses plaintiffs' § 10(b) and Rule 10b-5 claims; and (2) identical claims have been dismissed in a previous fiduciary action. Plaintiffs contend that their claims should not be dismissed because their § 10(b) and Rule 10b-5 claims are not dismissed and because the previous case involved different parties.

Having carefully reviewed the parties' submissions, the Court finds that plaintiffs' claims for breach of fiduciary duty and violation of Oklahoma Uniform Securities Act of 2004 should not be dismissed. *See* 28 U.S.C. § 1367(c). Here, the Court retains supplemental jurisdiction over

---

[3]When ruling on a motion to dismiss, a court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).

[4]In *Boone*, the Tenth Circuit noted that it had not reached the question of whether a cause of action for lost state remedies, such as an injunction, satisfies the causation element. *Boone*, at 972 F.2d at 1558 n. 12.

[5]Defendants have not asserted argument as to the second and fifth elements set forth in *City of Phila*, 264 F.3d 1257-58.

plaintiffs' state law claims because, as discussed above, the Court has not dismissed plaintiffs' § 10(b) and Rule 10b-5 claims.  Moreover, the Court finds that the previous fiduciary action has no preclusive effect because defendants have failed to established that plaintiffs were parties or privies to the previous fiduciary action case. *See Brady v. UBS Fin. Servs., Inc.*, 538 F.3d 1319, 1327 (10th Cir. 2008) (requiring the same identity of parties or the privies in order to have preclusive effect).

Defendants also moved to dismiss plaintiffs' § 10(b) and Rule 10b-5 claims based upon *Melnyk v. Consonus, Inc.*, No. 2:03–CV–00528 DB, 2005 WL 2263950 (D. Utah Sept. 12, 2005) and *Boone*, 972 F.2d at 1557.  However, the Court finds that *Menlyk*, 2005 WL 2263950, is inapplicable as said case analyzed Utah securities claims in regards to a short form merger, whereas the case at bar involves Oklahoma securities claims.  Additionally, *Boone* rejected theories of causation based solely on allegations of breach of fiduciary duty under state law, but does not impact whether a plaintiff can bring a state fiduciary claim based upon the "entire fairness" of the merger.  *Boone*, 972 F.2d at 1557.

IV.    Conclusion

For the reasons set forth above, the Court DENIES defendants' Motion to Dismiss [docket no. 13].

**IT IS SO ORDERED this 6th day of June, 2013.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE